```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

Kenneth E. Haggard, et al.,     :

        Plaintiffs,             :

    v.                          :        Case No. 2:09-cv-1144

John S. Stevens,                :        JUDGE GRAHAM

        Defendant.              :
```

OPINION AND ORDER

This matter is before the Court to consider the motion filed by plaintiffs Kenneth Haggard and Maryann Tomczyk to substitute the Estate of John S. Stevens, represented by Patricia Stevens Kudlacz, Independent Administrator ("Estate"), as the defendant in this case. The motion has been fully briefed.  For the following reasons, plaintiffs' motion to substitute will be denied.  Further, because denial of the motion to substitute leaves no remaining claims, this case will be dismissed.

I.  Background

This case is one of several cases filed in this Court relating to the receivership of Miami Valley Bank.  In this action, the plaintiffs assert a Bivens-type claim (see Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)) against John Stevens, a former attorney investigator with the Federal Deposit Insurance Corporation ("FDIC").  They allege that Mr. Stevens retaliated against them in violation of their First Amendment rights.  According to the complaint, Mr. Stevens utilized various regulatory enforcement mechanisms against them in retaliation for the filing of MVB Mortgage Corporation v. FDIC, Case No. 2:08-cv-771, currently pending in this Court.  The facts underlying Case No. 2:08-cv-771 are set out in previous orders in that case and will not be repeated

here.  In the present case, plaintiffs assert that, shortly after Case No. 2:08-cv-771 was filed, Mr. Stevens caused the FDIC Regulator to initiate an investigation of Mr. Haggard and Ms. Tomczyk.

According to the complaint, the FDIC Regulator had already abandoned enforcement proceedings against them in 2007 but initiated a "new" or "sham" investigation as a result of Mr. Stevens' conduct. Plaintiffs allege that, during this "sham" investigation, Mr. Stevens employed various witness intimidation tactics including the imposition of an unauthorized "gag order" and the involvement of the FBI.  Further, plaintiffs contend that, following the denial of the FDIC-Receiver's motion for summary judgment in Case No. 2:08-cv-771, Mr. Stevens' actions escalated, culminating in the issuance by the FDIC-Regulator of formal Orders of Prohibition against plaintiffs' participation in the banking industry.  Plaintiffs assert that the retaliatory nature of Mr. Stevens' conduct became clear when the FDIC proposed to resolve the disciplinary action through a consent agreement process which would have required the dismissal of Case No. 2:08-cv-771.

On April 18, 2010, Mr. Stevens died and Patricia Stevens Kudlacz was appointed as the personal representative of his estate. On May 10, 2010, Ms. Kudlacz filed a suggestion of death on the record.  Following a status conference, the Court issued an order noting that the plaintiffs would move to substitute Mr. Stevens' estate as a party defendant.  The order directed the parties to brief the motion in accordance with the Local Civil Rules.  They have done so, and the motion is now ripe for decision.

## II.  The Motion to Substitute

The parties' arguments will be addressed in further detail below, but the essence of their positions can be summarized as follows.  Plaintiffs assert that federal law governs the issue of whether their Bivens claim survives Mr. Stevens' death.  Plaintiffs,

quoting Carlson v. Green, 446 U.S. 14, 23-25 (1980), assert that "Bivens defendants are federal officials brought into federal court for violating the Federal Constitution." Consequently, plaintiffs contend, relying on Carlson, that questions of survivability relating to a Bivens claim should be governed by federal common law.

According to plaintiffs, under federal common law, "there can be no question that Plaintiffs' claim survives Stevens' death." As plaintiffs explain, under federal common law, actions for penalties do not survive the death of the defendant, but remedial actions do. Plaintiffs rely on a three-part test set forth by the Sixth Circuit in Murphy v. Household Finance Corp., 560 F.2d 206 (6th Cir. 1977) to demonstrate that their cause of action is clearly remedial. While recognizing that Murphy addresses only federal statutory causes of action, plaintiffs contend that its analysis is equally applicable here because their "underlying claim is purely a creature of federal common law and has no relationship with any particular state." Plaintiff's Motion to Substitute (#27), p. 6.

The Estate, on the other hand, asserts that because federal law is silent on the issue of survivability in either §1983 or Bivens cases, federal courts look to the law of the forum state. The Estate cites several federal cases it believes demonstrate courts' reliance on state law to determine survivability in Bivens actions. Further, the Estate contends, the Supreme Court in Carlson expressly limited its holding to a situation where the defendant's unconstitutional conduct caused the plaintiff's death. In short, the Estate argues that Carlson is a very narrow exception to a well-established rule. Moreover, the Estate asserts, state law frequently fills in the gaps in Bivens cases with respect to other issues including the length, tolling and appropriate statute of limitations period.

Looking to Ohio law, the Estate contends that Ohio Revised Code §2305.21 controls. According to the Estate, under this statute, a

cause of action extinguishes upon death unless (1) it survived at common law, or (2) it is for mesne profits, injuries to the person or property, deceit, or fraud. The Estate asserts that, because plaintiffs can meet neither prong of the Ohio statute, their Bivens claim cannot survive. The Estate also argues that because the Ohio law on survivability is not inconsistent with the Constitution and laws of the United States, the Court does not need to fashion a new federal common law. Consequently, the Estate requests that this case be dismissed with prejudice.

### III. Analysis

#### A. Which Law of Survivability Applies?

Rule 25(a) of the Federal Rules of Civil Procedure permits the court to substitute the proper party in the event a party dies, the claim is not extinguished by the death, and the motion is made within 90 days. Rule 25(a) is procedural and does not provide a method by which the survivability of an action is determined. There is no dispute regarding the timeliness of the motion. Consequently, as indicated above, the preliminary question for the Court is whether federal or state law governs the issue of survivability.

The plaintiffs contend, and the Estate does not disagree, that the leading case applying federal common law in determining the survivability of a Bivens claim is Carlson v. Green, 446 U.S. 14 (1980). In Carlson, the administratix of a deceased federal prisoner's estate brought suit against prison officials alleging violations of the prisoner's due process, equal protection, and Eighth Amendment rights. In concluding that these causes of action survived the prisoner's death, the Supreme Court held that federal common law allows survival of the action whenever the state survival statute would abate a Bivens action brought against defendants whose conduct resulted in death.

The plaintiffs construe Carlson as creating a "uniform federal rule" of survivability applicable to all Bivens actions. Central

to the plaintiffs' position is the following language from <u>Carlson</u>:

> The essentiality of the survival of civil rights claims for complete vindication of constitutional rights is buttressed by the need for uniform treatment of those claims, at least when they are against federal officials. As this very case illustrates, uniformity cannot be achieved if courts are limited to applicable state law. ... The liability of federal agents for violation of constitutional rights should not depend upon where the violation occurred.... In sum, we hold that whenever the relevant state survival statute would abate a <u>Bivens</u>-type action brought against defendants whose conduct results in death, the federal common law allows survival of the action.
>
> <u>Bivens</u> defendants are federal officials brought into federal court for violating the Federal Constitution. No state interests are implicated by applying purely federal law to them. While it makes some sense to allow aspects of §1983 litigation to vary according to the laws of the States under whose authority §1983 defendants work, federal officials have no similar claim to be bound only by the law of the State in which they happen to work.

<u>Carlson</u>, 446 U.S. at 24 (quoting <u>Green v. Carlson</u>, 581 F.2d 669 (7th Cir. 1978)).

To the contrary, as noted above, the Estate argues that <u>Carlson</u> is expressly limited to the specific situation where the defendant's unconstitutional conduct caused the plaintiff's death. In making this assertion, the Estate relies on the following language set forth in <u>Carlson</u> at footnote 11:

> "Nevertheless, as to other survivorship questions that may arise in <u>Bivens</u> actions, it may be that the federal law should choose to incorporate state rules as a matter of convenience. We leave such questions for another day."

Additionally, the Estate notes that, since Carlson, courts continue to apply the law of the forum state in determining whether a Bivens claim survives the death of a party. On this point, the Estate cites Grandbouche v. Clancy, 825 F.2d 1463 (10th Cir. 1987), Wolters v. Conner, 2004 WL 2496699 (D. Kan. Nov. 4, 2004) and Barrett v. United States, 651 F.Supp. 604 (S.D.N.Y. 1986). The Estate also cites two cases decided prior to Carlson - Robertson v. Wegmann, 436 U.S. 584 (1978) and Beard v. Robinson, 563 F.2d 331 (7th Cir. 1977).

The plaintiffs contend that the cases cited by the Estate are easily distinguishable from Carlson and provide no support for the position that Carlson is not controlling here. The Court will begin its analysis of the issue with an examination of the cases cited by the parties.

In Grandbouche, the plaintiff, Mr. Grandbouche, had brought suit against IRS investigators and an IRS informant claiming that they had, among other things, seized information from an organization espousing dissident views on the federal income tax system in violation of his First and Fourth Amendment rights. Mr. Grandbouche died while the appeal was pending. In addressing the issue of survivability of his claims, the Tenth Circuit noted that in suits against state officials brought under §1983, questions of survivorship are decided by looking to state law. The Court noted, however, that the law under §1983 had no direct application to Mr. Grandbouche's Bivens action. At the same time, the Court recognized that actions under §1983 and Bivens are "conceptually identical" and "federal courts frequently look to section 1983 to fill gaps left by Bivens." Grandbouche, 825 F.2d at 1465. The Tenth Circuit stated that its review of the case law indicated that "questions of survivorship in Bivens suits are decided by looking to state law" and proceeded to apply Colorado law in concluding under that law that Mr. Grandbouche's action survived his death.

In reaching this conclusion, the Tenth Circuit acknowledged that Carlson contained language to the effect that the Supreme Court might apply a federal rule allowing survival of all Bivens actions "to further the goal of deterring the unconstitutional conduct of federal officials," but because it concluded that Mr. Grandbouche's suit survived under Colorado law, it would not address whether his claim would survive under federal law based on Carlson. Id. at 1465 n. 1.

In Wolters, the plaintiff, a federal prisoner, brought a Bivens action alleging the violation of his constitutional rights arising from an assault. Following the death of one of the defendants, the plaintiff moved to substitute the representative of the estate as a defendant. The court, without discussion, cited to a Tenth Circuit case for the proposition that survival of a §1983 claim is determined by looking to state law and concluded that the substitution request appeared "to be well taken" under Kansas law. Wolters, 2004 WL 2496699, at *3.

Barrett was a §1983 case in which the court held that the law of the state in which the action arose must be applied in determining whether a §1983 claim survives the death of a defendant. The court also stated, without discussion, that the absence of federal law with respect to Bivens claims requires the application of state law to those claims as well. Barrett, 651 F.Supp. at 605. The court went on to hold that, under New York law, a §1983 claim survives a defendant's death.

In Beard, decided roughly two and one-half years prior to Carlson, the plaintiff, the administratrix of the estate of an alleged murder victim, brought suit under 42 U.S.C. §1981 against state officers and under Bivens against federal officers. In considering whether the claims survived, the Seventh Circuit looked to Illinois state law, and stated that when "[f]aced with the absence of a governing federal rule of decision, most courts that

-7-

have considered the question of the survival of federal civil rights claims have looked to state law...." Beard, 563 F.2d at 333. The Court found that borrowing state law under the circumstances of that case was consistent with the policies underlying Bivens and civil rights claims and declined the opportunity to "fashion an independent common law rule." Applying the Illinois Survival Act as federal law, the Seventh Circuit held that the plaintiff's Bivens action survived.

Robertson, a §1983 action in which the plaintiff died before trial, was distinguished by the Supreme Court in Carlson on grounds that the acts of defendants at issue in the suit had not caused the plaintiff's death. Following the directive of 42 U.S.C. §1988, the Supreme Court looked to Louisiana state law to determine whether the action survived the plaintiff's death. Applying Louisiana law, the Supreme Court held that the action abated but found that this outcome could not be deemed "inconsistent with the Constitution and laws of the United States." 42 U.S.C. §1988; Robertson, 436 U.S. at 593.

The Court's review of these cases reveals that, aside from Carlson, questions of survivorship in Bivens suits appear to be decided by looking to state law. The Court's additional research indicates that Carlson is generally interpreted as limited to its specific factual circumstances - where death results from a civil rights violation. See, e.g., Scissons v. United States, 2006 WL 3147712, at *2 (D. Idaho Nov. 1, 2006) ("It is well-settled that a Bivens claims against a government actor whose conduct fatally injures a person survives the death of that person. Carlson v. Green, 446 U.S. 14, 24 (1980)"); Jones v. Prince George's County, Md., 355 Fed.Appx. 724, 730 n.8 (4th Cir. 2009) ("We recognize that after Robertson v. Wegmann, 436 U.S. 584, 594, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), and Carlson v. Green, 446 U.S. 14, 24, 100 S.Ct. 11468, 64 L.Ed.2d 15 (1980), it would appear that a federal

-8-

rule of survival supersedes any state law requiring abatement when the acts of §1983 defendants caused the death of the injured party."); Stephens v. County of Albermarle, 2005 WL 3533428, at *9 n.6 (W.D. Va. Dec. 22, 2005) ("'[W]henever a state survival statute would abate the action brought against defendants whose conduct results in death, the federal common law permits survival of the action.'" (quoting O'Connor v. Several Unknown Correctional Officers, 523 F.Supp. 1345, 1348 (E.D. Va. 1981)); Hudson v. Kelly, 1999 WL 412705, at *2 (N.D. Ill. June 3, 1999) ("In Carlson the court found that a uniform federal law was necessary to achieve the policies of deterring federal officials from violating federal constitutional rights and that whenever a state survival statute would extinguish the action brought against defendants whose conduct results in death, federal law permits survival of the action.").

In Jones v. George, 533 F.Supp. 1293, 1304 (S.D. W.Va. 1982), the Court addressed Carlson as follows:

> ... Carlson and Robertson, separately, but especially when read in pari materia, stand implicitly for the proposition that in situations where death results from civil rights violations- whether in the Bivens or 42 U.S.C. §1983 context- survival of a cause of action based on personal injuries resulting from those violations is in keeping with the philosophy behind and the policies of the remedy, and thus perhaps should exist, unless the law applicable to viable claims joined with the personal injury claims satisfies that philosophy and those policies as they apply to personal injury claims. ...
>
> If Indiana's wrongful death law had provided for more liberal recovery, as applied to the facts of the Carlson case, and those purposes had been deemed thereby met, the court takes it that a federal common law of survival would likely not have been fashioned or applied.

The Jones court construed Carlson as indicating that, "in a

Bivens case, state law must still be looked to in the first instance." Id. This construction appears to be consistent with the approach taken by the courts in the cases cited by the Estate. Further, as the interplay between Robertson and Carlson has been described in the civil rights context,

> [they] establish two distinct approaches for resolving those questions that still remain open relating to the survival of civil rights actions. *For those civil rights actions within the scope of section 1988*, Robertson requires application of state law unless it is inconsistent with federal law.... *Civil rights actions not controlled by section 1988 are another matter entirely.* Carlson teaches that state rules may be adopted as a matter of convenience. At the same time, however, there is no congressionally imposed obligation to do so. The federal courts are free to fashion federal common law rules to determine whether a civil rights claim survives, without regard to any inconsistent state law.

Kettner v. Compass Group USA, Inc., 570 F.Supp.2d 1121, 1130 (D. Minn. 2008) (quoting 2 Cook & Sobieski, *Civil Rights Actions* ¶4.05, at 4-83-85). Though Carlson itself made clear that §1988 has no application to a Bivens action – "Section 1988 does not in terms apply to Bivens actions, and there are cogent reasons not to apply it to such actions even by analogy," Carlson, 446 U.S. at 25 n.11 – the Kettner court's discussion of Carlson is not inconsistent with the approach noted above that the consideration of state law should at least be the starting point.

In sum, the Court is not persuaded by plaintiffs' position that a uniform federal rule of survivability exists in a Bivens action other than in the circumstance when death results from alleged unconstitutional conduct. Based on the current state of the law, the Court does not believe that the issue is as well-settled as plaintiffs contend. Carlson's narrow language and the various courts' interpretation of its language in the intervening

thirty years do not support such an expansive view of the survivability issue. Consequently, the Court will continue its analysis with the consideration of whether plaintiffs' Bivens claim survives under state law.

B. Does Plaintiffs' Bivens Claim Survive Under State Law?

The Estate relies on Ohio law in asserting that the plaintiffs' Bivens cause of action was extinguished by Mr. Stevens' death. Because plaintiffs urge the application of federal law, they do not suggest that the law of any other state may be applicable here. The Court, however, believes that, at the outset, some discussion of whether Ohio law is the applicable state law is in order.

The Sixth Circuit has held that, "[f]or purposes of determining the applicable statute of limitations in Bivens actions, we apply the most analogous statute of limitations from the state where the events giving rise to the claim occurred." Baker v. Mukasey, 287 Fed.Appx. 422, 424 (6th Cir. 2008). Further, state law governs questions of tolling and application of the statute of limitations in Bivens actions. Harris v. U.S., 422 F.3d 322, 331 (6th Cir. 2005); see also Bishop v. Children's Center for Developmental Enrichment, __ F.3d __ (6th Cir. Aug. 25, 2010)("When the statute of limitations is borrowed from state law, so too are the state's tolling provisions...."). These cases, read together, instruct that for various Bivens issues arising in this Circuit, the law of the state where the events giving rise to the claim occurred will control.

As noted above, this case is one of several cases filed in this Court relating to the appointment of the FDIC as receiver of Miami Valley Bank. According to the complaint, Miami Valley Bank's principal place of business was located in the Southern District of Ohio, Eastern Division. Complaint (Doc. #1) at ¶5. Further, Mr. Haggard was the sole shareholder of Miami Valley Bank and Ms.

Tomczyk was the Chairman of its board of directors. Id. at ¶¶4-5.

Moreover, in asserting that venue is proper here, the complaint alleged that "Defendant has engaged in substantial activities within this district and his unconstitutional, retaliatory actions are in response to Plaintiffs causing the filing of a case currently pending before this Court: MVB Mortgage Corporation v. FDIC, Case No. 2:08 cv 771 (S.D. Ohio)(Graham, J.). Thus, the actions and harm alleged are directly related to Plaintiffs' constitutionally-protected activities and Defendant's unconstitutional actions within this District." Id. at ¶10. Further, "[t]he administrative investigation undertaken by Steven (sic) involved activities in the State of Ohio, including depositions and the service of subpoenas." Id. at ¶32.

The Court finds that the allegations of the complaint support the conclusion that the events giving rise to the claim occurred in Ohio. Following the precedent in Bivens actions in this Circuit, the Court agrees with the Estate that Ohio law is applicable here. In reaching this conclusion, the Court notes that the application of Ohio law is consistent with the holdings of other courts which apply, at least in the statute of limitations context of Bivens actions, either the law of the forum state or the law of the state where the claim arose. See, e.g., Starks v. Hollier, 295 Fed.Appx. 664, 665 (5th Cir. 2008) (law of the forum state); Papa v. U.S., 281 F.3d 1004, 1009 (9th Cir. 2002) (law of the forum state); Bender v. GSA, 539 F.Supp.2d 702, 707 (S.D.N.Y. 2008) (law of the forum state); Van Tu v. Koster, 364 F.3d 1196, 1198 (10th Cir. 2004) (law of the state where the action arose); Molina-Acosta v. Martinez, 392 F.Supp.2d 210, 215 (D. P.R. 2005) (law of the state where the alleged injury occurred).

Additionally, the Court notes that the application of Ohio law is consistent with general choice of law principles as set forth in the Restatement (Second) of Conflicts of Law. In federal question

cases, choice of law principles derive from federal common law. German Free State of Bavaria v. Toyobo Co., Ltd., 480 F.Supp.2d 948, 955 (W.D. Mich. 2007). In the absence of any established body of federal choice of law rules, courts look to the Restatement. DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden, 448 F.3d 918, 922 (6th Cir. 2006). Although not controlling here, Ohio also has adopted the Restatement's choice of law principles. Medical Mut of Ohio v. deSoto, 245 F.3d 561, 570 n.9 (6th Cir. 2001).

In applying the Restatement, courts look to the section which corresponds to each claim. Lewis v. Horace Mann Ins. Co., 410 F.Supp.2d 640, 654 (N.D. Ohio 2005). A Bivens action, like a §1983 action "encompasses broad ranges of tort-type actions and is commonly referred to as a 'constitutional tort.'" Shannon v. Recording Industry Ass'n of America, 661 F.Supp. 205, 209 (S.D. Ohio 1987). The Restatement section applicable to torts is §145. Lewis, at 654. The factors to be considered in determining which state has the most significant relationship to a claim include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue." Id. (quoting Restatement(Second) of Conflict of Laws §145(1)). These factors, when applied to the allegations of the complaint set forth above, support a finding that Ohio has the most significant relationship when considered against any other state which arguably might have a connection to this case.

In reaching this conclusion, the Court considered the survival statutes of Michigan and Illinois - the states of residence or place of business of the parties. The Court's review of Michigan law indicated that the Michigan survival statute, Mich. Comp. Laws

§ 600.2921, which provides that "[a]ll actions and claims survive death," would allow plaintiffs' claim to survive. See also Hardy v. Maxheimer, 429 Mich. 422 (1987). Whether plaintiffs' claim would survive under Illinois law is less clear. However, the Illinois Survival Act, 755 Ill. Comp. Stat. 5/27-6, does permit survival of personal injury actions. At least one court has applied the Survival Act to hold that Title VII and §1983 claims, which are in some respects similar to plaintiffs' retaliation claim, survived the death of a defendant. See Wood v. Chicago Bd. of Educ., 1998 WL 832656 (N.D. Ill. Nov. 20, 1998); see also Beard, 563 F.2d 331. However, given the allegations of plaintiffs' complaint, the Court cannot conclude that either Michigan or Illinois has a more significant relationship to this case than Ohio has. Consequently, neither Michigan or Illinois law is applicable here. The Court will turn now to the issue of whether the plaintiffs' claim survives under Ohio law.

According to the Estate, Ohio Revised Code §2305.21 controls here. That statute states as follows:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto.

The Estate argues that at common law, causes of action based in contract survived but actions based in tort did not. The only exception to this rule was a tort action alleging property damage. According to the Estate, plaintiffs have not alleged a cause of action based in contract nor one that involves property damage. As a result, the Estate argues, plaintiffs have not met the first prong of §2305.21.

Further, the Estate contends that plaintiffs have not met the second prong of §2305.21 because they have not alleged a cause of

action for injuries to the person or property.  According to the Estate, an action for injuries to the person requires physical injuries.  Witcher v Fairlawn, 113 Ohio App.3d 214 (Ohio Ct. App. 1996); Murray v. State, 2002 WL 337732 (Ohio Ct. App. Feb. 21, 2002).  A violation of personal rights is not a physical injury. Witcher, 113 Ohio App.3d at 715; Murray, 2002 WL 337732  at *3.

Plaintiffs do not seriously challenge the Estate's position that, under Ohio law, their cause of action would be extinguished. Instead, the bulk of their reply is focused on distinguishing the cases cited by the Estate and affirming their position that federal common law controls here.

Plaintiffs do, however, suggest in a footnote found on page four of their reply that Ohio law would recognize survival of their claims.  Their argument on this point can be summarized as follows. Plaintiffs allege in their complaint that Mr. Stevens engaged in unconstitutional conduct in order to "frustrate" their "pursuit of judicial relief on behalf of MVB Mortgage" in Case No. 2:08-cv-771. Plaintiffs rely on Loveman v. Hamilton, 66 Ohio St.2d 182 (1981), for the idea that an injury to a party's "right to bring a cause of action in a court of law" is an injury to property as contemplated by §2305.21.  In Loveman, the Ohio Supreme Court held that a claim for legal malpractice survived the death of the attorney because the allegation that the lawyer failed to file an underlying lawsuit within the applicable statute of limitations period asserted an injury to personal property.  As the Supreme Court noted, "intangible choses in action, such as ... the right to bring a cause of action in a court of law, are also considered personal property."  Id. at 185.

To the extent that an argument set forth in a footnote might be worthy of the Court's attention, the Court finds plaintiff's argument unpersuasive.  Plaintiffs' First Amendment retaliation claim is not a claim that they were unable to bring a cause of action in a court of law.  Rather, their claim is that, because

-15-

they did, Mr. Stevens engaged in various unconstitutional tactics in response. In short, plaintiffs are suggesting that the Court construe their First Amendment retaliation claim as a claim for an injury to personal property. The Court simply is unwilling to make such a leap.

In light of the above, the Court agrees with the Estate that, under Ohio law, plaintiffs' claim does not survive the death of Mr. Stevens. The Court is not convinced, however, based on a reading of Carlson and the other cases cited above, that its analysis ends here. Rather, the Court believes that some consideration of whether such an outcome is inconsistent with the purposes behind Bivens actions is in order. See Bishop, supra (considering whether Ohio's tolling provisions were "'inconsistent with the federal policy underlying the cause of action under consideration.' Bd. of Regents v. Tomanio, 446 U.S. 478, 485 (1980)").

    C.   Is the Application of Ohio Law Inconsistent with the Constitution and Laws of the United States?

The Estate, relying on Robertson and other §1983 cases, argues that the Court may only fashion a federal common law of survivorship if the application of Ohio law is "inconsistent with the Constitution and laws of the United States." Id. at 590. According to the Estate, the application of Ohio law is not inconsistent with federal law, even though its application results in the extinguishment of plaintiffs' claim. The plaintiffs do not directly address this argument but assert that a uniform rule of survivability is consistent with the general federal common law that remedial actions survive the death of a party.

The Court agrees with the Estate that the application of Ohio law to the circumstances of this case does not result in the type of inconsistency cautioned against in Robertson. The reasoning in Robertson, although a §1983 case, is equally applicable here. That is, the mere fact that a state statute prevents plaintiffs from proceeding with the litigation does not make it inconsistent with

federal law. If survivability of the action "were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring plaintiff, and its source would be essentially irrelevant." Id. at 593.

The factors important to the Court in Robertson support a similar result here. The application of Ohio law has no adverse effect on the policies underlying Bivens actions, which are, primarily, the deterrence of unconstitutional conduct by federal officials. Further, Ohio law provides for the survival of various tort actions including those involving physical injury. Moreover, and perhaps most significantly in light of current authority, this case does not present a situation where the alleged deprivation of plaintiffs' rights resulted in death. These factors, taken together, do not compel the Court to fashion a federal common law of survivability under the circumstances of this case. The rare instances where Bivens claims are not based on either the death of a plaintiff or personal physical injury to a plaintiff, and where the attending defendant dies during the course of the litigation, will not serve to undermine the general policy that federal officials be held accountable for their unconstitutional conduct.

Additionally, while the Court's analysis of the survivability issue does not involve consideration of the merits of plaintiffs' claim, the Court is mindful of the general hesitation to expand the bases of Bivens actions. See Arar v. Ashcroft, 585 F.3d 559, 573 (2nd Cir. 2009) ("'[A] Bivens remedy is a subject of judgment ... [in which] courts must ... pay particular heed ... to any special factors counseling hesitation before authorizing a new kind of federal litigation.'") (quoting Wilkie v. Robbins, 551 U.S. 537, 550 (2007)). Because the Court has chosen not to fashion a federal common law of survivability in this case, it need not address whether plaintiffs' Bivens claim is remedial in nature under the test set forth in Murphy v. Household Finance Corp., 560 F.2d 206,

209 (6th Cir. 1977).  Further, because, under Ohio law, the plaintiffs' claim does not survive the death of Mr. Stevens and such a result is not inconsistent with the Constitution or laws of the United States, the motion to substitute will be denied.  Given that the denial of plaintiffs' motion is effectively dispositive of their claim, this case will be dismissed.

## IV. Disposition

Based on the foregoing, the motion to substitute the Estate of John S. Stevens as defendant (#27) is DENIED.  This case is DISMISSED.  The Clerk shall enter judgment accordingly.

It is so ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: September 14, 2010